UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALIFORNIA VALLEY MIWOK TRIBE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior, *et al.*, <br><br> Defendants. | Case No. 22-cv-1740 (JMC) |

**MEMORANDUM OPINION**

  Members of the California Valley Miwok Tribe (CVMT) have sued various officials within the Department of the Interior, challenging the Assistant Secretary for Indian Affairs' 2022 decision defining the categories of groups eligible to participate in the Tribe's organization under the Indian Reorganization Act. ECF 1. Because the Bureau of Indian Affairs (BIA) has recently taken steps towards tribal organization, Plaintiffs move for a preliminary injunction to halt the organization process pending a final decision on the merits from this Court. ECF 37. Plaintiffs argue that allowing Tribal organization to proceed under what they claim is arbitrary and capricious membership eligibility criteria is not only unlawful, but will cause irreparable harm to the Tribe's sovereignty, self-determination, and dignity. The Government Defendants counter that Plaintiffs' injury is neither imminent nor irreparable, pointing to the inherent uncertainties of the organization process on top of the other relief that would be available to Plaintiffs once, if ever, a Tribal constitution is adopted and ratified by the BIA.

  Notably, this is not the first attempt by a CVMT group to halt the Tribe's organization process in recent years. In fact, it is the fourth. ECF 38 at 8. And while Plaintiffs' argument about

1

the harm they may face is grounded in democratic values that are real and that this Court takes seriously, the Court cannot overlook the history of similar challenges that cuts against them. All three prior attempts, some of which involved a few of the Plaintiffs in this case, to enjoin organization proceedings arose from similar claims of alleged overinclusive membership tainting the organization process, and all three were denied in large part for failure to show irreparable and imminent harm. *CVMT v. Jewel*, Civ. No. 2:16-01345, 2016 WL 6217057, at *3 (E.D. Cal. Oct. 24, 2016); Hearing Tr. at 44, *CVMT v. U.S. Dep't of Interior*, No. 19-cv-917, (D.D.C. June 7, 2019), ECF 18; *Aranda v. Sweeney*, No. 19-cv-613, 2019 WL 1599178, at *2 (E.D. Cal. Apr. 15, 2019). On top of other shortcomings, Plaintiffs have not provided sufficient authority establishing that their potential harm, unlike that of previous movants, is irreparable and imminent. As such, the Court is not prepared to find that Plaintiffs have met their hefty burden on this element. Because a failure to show irreparable harm is fatal to a preliminary injunction motion, the Court **DENIES** Plaintiffs' motion.[1]

I.  **BACKGROUND**

Because the Plaintiffs seek to suspend the CVMT organization under the Indian Reorganization Act (IRA), the Court will provide a brief primer on this process. The IRA recognizes the right of Indian tribes "to organize for [their] common welfare" and "adopt an appropriate constitution and bylaws" through what is called a Secretarial election. 25 U.S.C. § 5123(a). Organization is not only foundational for tribal self-governance, it may also qualify a tribe for certain "governmental benefits [that] may flow only to tribes organized under the [IRA]." *CVMT v. United States*, 515 F.3d 1262, 1264 (D.C. Cir. 2008). This process does not happen

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

overnight, however, as regulations promulgated by the Secretary of the Interior prescribe various steps to ensure that tribal organization "reflect[s] majoritarian values." *Id.* at 1267–68; *see* 25 C.F.R. Part 81. The Tribe must identify or develop a governing document, gather tribal support for and submit a petition to the BIA for an election, and then allow time for tribal members and the BIA to review the petition. 25 C.F.R. §§ 81.51–62. If the petition is valid, the BIA will then hold an election, appoint an election board, and review the election results (and any challenges to the same) to either approve or reject the proposed governing document. *Id.* §§ 81.19, 81.43–45.

Despite several attempts, the CVMT has been unable to organize under the IRA. ECF 1 ¶ 2. Time and again, in and out of the courts, the CVMT has fought over the same foundational question: who has a legitimate claim to membership and thus the right to participate in the Tribe's organization? *See, e.g.*, *CVMT v. Zinke*, No. 16-cv-1345, 2017 WL 2379945, at *1 (E.D. Cal. June 1, 2017) (collecting cases since 2006 reflecting the "long-running leadership dispute over the Tribe"). The BIA, for its part, has resolved this question differently over the years. *Compare* ECF 34-32 at 2–3 (2011 decision limiting CVMT membership to five people), *with* ECF 34-43 at 5 (2015 decision using broader eligibility criteria). The present lawsuit focuses only on the Agency's two most recent declarations on this critical issue.

In 2015, Assistant Secretary (AS-IA) Kevin Washburn issued a decision on eligibility criteria that came in the wake of a key judicial ruling. ECF 34-43 at 2 (citing, among other things, *CVMT v. Jewel*, 5 F. Supp. 3d 86 (D.D.C. 2013)). Two years earlier, a court in this District had vacated a 2011 BIA decision that limited the Tribe to five people, finding the AS-IA at the time "was remiss in assuming that the Tribe's membership consisted of only those five individuals" in light of an administrative record "replete with evidence that the Tribe's membership is potentially significantly larger." *CVMT*, 5 F. Supp. 3d at 96, 98. Guided by both this ruling and a "record

show[ing] that there are far more than five people eligible to take part in the organization of the Tribe," Washburn identified three core categories of eligible CVMT members connected to the original California land that the United States had acquired in 1916 "for the benefit of the Mewuk Indians residing in the Sheep Ranch area of Calaveras County":

(1) the individuals listed on a key 1915 Census of Sheep Ranch (plus their descendants);

(2) descendants of a Miwok Indian named Jeff Davis[2]; and

(3) the heirs of a Miwok Indian named Mabel Dixie.

ECF 34-43 at 5. Washburn also considered the role of the descendants of those listed in another relevant "1929 Census." *Id.* at 6. Washburn found that the 1929 Census recorded a survey of Calaveras County as a whole and identified 147 primarily Miwok Indians, all of whom maintained relations with one another, and some of whom were related to the Sheep Ranch Miwoks on the 1915 Census. *See id.* at 6. Washburn thus left it to those in the "Eligible Groups" to decide whether to include 1929 descendants who did not meet any of the other eligibility criteria. *Id.* at 6. Despite legal challenges in the Ninth Circuit brought by a small faction of the CVMT, Washburn's decision was upheld. *CVMT*, 2017 WL 2379945, at *1, *aff'd*, 745 F. App'x 46 (9th Cir. 2018).

In 2022, however, AS-IA Bryan Newland revisited and revised the Washburn Decision. ECF 34-78. Newland observed that, four years after the Washburn decision was issued, a significant genealogical error was discovered. *Id.* at 4. A man named John Jeff was long believed to be the son of Jeff Davis and, in fact, the vast majority of those who petitioned for a Secretarial election in 2018 traced their lineage and CVMT membership to John Jeff (as a descendant of Jeff Davis). *Id.* As it turns out, John Jeff was not the son of Jeff Davis, and this factual correction "severely reduce[d] who c[ould] take part in the organized process." *Id.* at 5; *see* ECF 34-66 at 3

---

[2] Jeff Davis is, redundantly, also listed on the 1915 Census. ECF 34-2 at 3.

(listing only ten eligible individuals). After finding that Washburn, like many others, assumed that the many descendants of John Jeff "would be included in the organizational process," Newland revised the portion of Washburn's decision regarding the conditional inclusion of Miwok descendants of the 1929 Census (on which John Jeff and his family appeared, ECF 34-5 at 7), declaring that this group "shall be included among the Eligible Groups." ECF 34-78 at 6.

About two weeks after the Newland Decision was issued, Plaintiffs sued to vacate that decision as arbitrary and capricious. ECF 1 (complaint filed June 16, 2022); ECF 34-78 (Newland Decision dated May 31, 2022). Summary judgment briefing concluded in March 2023, and this Court heard argument on the Parties' cross motions in May. *See* ECF 33; Minute Entry, May 2, 2023. Since then, and with the Newland Decision still effective, the BIA has taken steps towards CVMT organization. *See, e.g.*, ECF 37-1 at 68–69 (BIA public notice of August 30, 2023 informational meeting for CVMT organization); ECF 37-1 at 135 (BIA presentation materials laying out steps for organization). Plaintiffs now seek a preliminary injunction to pause the organizational process pending a final decision from this Court on the merits. ECF 37; ECF 39. Plaintiffs argue that, because they "do not consider descendants of the 1929 Census to be members of the Tribe," tribal organization under the Newland Decision is "an affront to [the] Tribe's sovereignty." ECF 37-2 at 2–4. Defendants oppose this motion, arguing, among other things, that Plaintiffs' alleged injury is not concrete, imminent, or irreparable. ECF 38 at 15, 21.

## II.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant must establish (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable harm without preliminary injunctive relief, (3) that the

balance of equities tips in its favor, and (4) that an injunction serves the public interest." *Id.* at 20; *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). It is the movant's burden to make a "clear showing" that all four factors support an injunction. *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014). Establishing an imminent, irreparable injury is of special importance for these motions. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy . . . ."). In fact, a court need not analyze the remaining factors if a movant fails to carry its burden of showing irreparable injury—"that alone is sufficient" to deny a motion for preliminary injunction. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.").

## III.     ANALYSIS

The Court finds that Plaintiffs have not met their "considerable burden" of demonstrating that they will be irreparably injured in the absence of immediate injunctive relief. *Power Mobility Coal v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005). Because "a preliminary injunction is an extraordinary and drastic remedy," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), the threatened injury that the injunction would serve to prevent must be both imminent and beyond remediation. *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118, 122 (D.D.C. 2017). Plaintiffs are thus charged with making a clear showing that the injury is certain, great, and "of such imminence that there is a clear and present need for equitable relief." *Id.* Plaintiffs' submissions do not clear this high bar.

The Court is not persuaded that inclusion of the 1929 descendants in the organization process will irreparably injure the Tribe's sovereignty. ECF 37 at 8; ECF 37-2 at 3–4. Plaintiffs identify four critical events during which it is pivotal to exclude the alleged nonmembers: formation of an eight-person constitutional committee that would draft a Tribal constitution, collection of feedback to refine the constitution, the Secretarial election itself, and BIA ratification of the constitution. ECF 37-2 at 3–4. To include 1929 descendants at any of these stages, Plaintiffs argue, would diminish "faith in the electoral process" and create a "risk of confusion and disenfranchisement" amongst true members. ECF 37 at 15. But despite Plaintiffs' forceful appeal to democratic principles, the Court is unable to find that the mere participation of these alleged nonmembers clearly constitutes an imminent, irreparable injury. Courts have rejected similar claims by similar CVMT groups in recent years, and the Court finds the reasoning of these prior decisions persuasive. Thus, while Plaintiffs insist that an overinclusive political process presents a risk of irreparable harm, they have not persuasively distinguished their current request from that of the multiple—and unsuccessful—emergency motions filed by other CVMT factions.

At least three times before this action, different small groups within the CVMT have sought to enjoin allegedly overinclusive Secretarial elections. *See* Motion to Stay at 2, *CVMT*, 2016 WL 6217057, ECF 10 (alleging that the BIA "illegally directed that the Tribe be reorganized with participation by unenrolled members beyond the five (5) existing enrolled members"); Motion for TRO at 30–31, *CVMT*, No. 19-cv-917 (D.D.C. June 7, 2019), ECF 2 (arguing that unlawful Secretarial election risks "ousting of Plaintiffs and their vested rights as the . . . only members of the federally recognized Tribe"); *Aranda*, 2019 WL 1599178, at *2 ("Plaintiffs argue that, due to the BIA's rejection of their challenge to the Registered Voters List, the Secretarial Election will be exclusively decided by people who are not members of the Miwok tribe."). Yet even when prior

7

movants acted on the eve of the election, the courts found they would not suffer irreparable or imminent injury should the election proceed. *See* Hearing Tr. at 42:15–19, 44:8–13, *CVMT*, No. 19-cv-917 (D.D.C. June 7, 2019), ECF 18 (finding that Plaintiffs "will not be irreparably injured without [a] Temporary Restraining Order" halting an election three days before its conclusion). These rulings similarly emphasize that the movants would have had at least one, if not multiple opportunities to challenge the electoral process later on. *See, e.g.*, *Aranda*, 2019 WL 1599178, at *3 (finding "[no] reason why Plaintiffs could not challenge the BIA's decision to finalize the results of the election . . . with the very same argument they used to challenge the Registered Voters List"). In Plaintiffs' situation then, where the "earliest practicable Election date" would be "May 2024" (which assumes all steps are "completed in the shortest time possible"), ECF 37-1 at 73, and Plaintiffs will have a chance to challenge the results of any allegedly improper election, 25 C.F.R. §§ 81.43–45, none of the truly consequential steps in the Tribal organization process strike the Court as imminent or irreparable, and Plaintiffs present no authority to the contrary.

To the extent Plaintiffs attempt to distinguish themselves from prior CVMT groups (notwithstanding the fact that there is overlap between these groups[3]) by emphasizing an injury of democratic process rather than democratic outcome alone, the Court is still not persuaded that the upcoming Tribal organization steps are actually "imminent." For example, Plaintiffs assert that considering and including 1929 descendants in the BIA's eight-person "Constitutional Committee" itself inflicts an injury to the Tribe's sovereignty and dignity. ECF 39 at 8. But even this preliminary organizational step does not seem clearly imminent. "While the BIA announced that it would select the Constitutional Committee members on September 8, 2023, as of October

---

[3] Marie Diane Aranda and Yolanda Fontanilla, represented by the same counsel in the present case, were plaintiffs in an (unsuccessful) lawsuit seeking to enjoin a 2019 Secretarial election based on similar claims of "infringement on the Miwok's sovereignty." *Aranda v. Sweeney*, No. 19-cv-613, 2019 WL 1599178, at *2 (E.D. Cal. Apr. 15, 2019).

10, 2023, no names ha[d] been announced." ECF 37 at 7 n.1. And at the motion hearing before this Court on November 9, 2023, Government counsel represented that the BIA still has not selected all eight Committee members and remains unsure as to when that will happen.[4] Add to this uncertainty the fact that a ruling on the merits is expected before the "earliest practicable" election date of May 2024, ECF 37-1 at 73, and the Court is even more unwilling to find that there has been a "clear showing" of imminent harm of any kind.

Yet even if the Court sets all that aside and assumes that, without warning, the BIA and the CVMT will rush to a Secretarial election forthwith, there are still additional reasons why Plaintiffs have not carried their hefty burden in proving that including 1929 descendants would "undermine the Tribe's sovereignty and legitimacy in ways that can never be repaired." ECF 37 at 8. For starters, Plaintiffs do not identify any irreparable harm still lingering from the elections in the past, which included the very group they now seek to exclude. Plaintiffs gesture at the BIA's continued consideration of the constitution selected in a (now-invalidated) 2019 election as evidence of the "lasting effects" of this improper process, ECF 37 at 15–16, but the Court struggles to see how this harm is "irreparable." Should Plaintiffs succeed in this lawsuit, they will become the entire eligible pool for committee formation, constitutional drafting, and voting purposes.[5] That means if they do not like the 2019 constitution for any reason whatsoever, they will have the exclusive power to reject it and draft a new one. The political monopoly Plaintiffs would gain upon victory here also renders Plaintiffs' concerns of "voter confusion and disenfranchisement" unpersuasive for similar reasons. ECF 37 at 15. That is, if Plaintiffs prevail then they will *become* "the electoral process,"

---

[4] Counsel for the Government also represented, and Plaintiffs' counsel confirmed, that two of the Plaintiffs have accepted invitations to join the Constitutional Committee. The Plaintiffs' own presence on the still-tentative Committee further cautions against a finding that concrete, let alone irreparably harmful, political processes will occur imminently.

[5] Only one individual, Noelani Marie Russell, who is the child of Plaintiff Rosalie Ann Aranda, is not listed as a Plaintiff in this suit. *Compare* ECF 1 (listing nine individual plaintiffs), *with* ECF 34-66 at 3 (listing Plaintiffs as nine of "[t]he ten adults who comprise the Tribe"), *and* ECF 37-2 at 6 (depicting family tree for these ten adults).

9

*id.*, which makes it difficult to believe that this same group would lose all faith in that same process simply because nonmembers were at some level involved in the past.

Finally, the Court does not find persuasive Plaintiffs' argument that the Newland criteria present a risk of irreparable harm to Tribal sovereignty in light of the Plaintiffs' several years of prior, contradictory conduct. For example, Plaintiffs rely on the testimony of Plaintiff Michael Mendibles to establish that including the 1929 descendants "will be an affront to [the] Tribe's sovereignty." ECF 37-2 at 4. Yet for years prior to this litigation, Mr. Mendibles and several other Plaintiffs recognized, welcomed, and defended this same group as part of the CVMT. In 2013, Mr. Mendibles proposed a constitution that extended membership to the 1929 descendants. ECF 34-38 at 30–31, 34. In 2018, Mr. Mendibles and six other Plaintiffs once again joined "the tribal community" in supporting a constitution that recognized 1929 descendants as members. ECF 34-50 at 2, 4–5 (constitution describing Tribal membership); ECF 34-47 at 16, 20, 46 (petition signatures including seven Plaintiffs). And when a different faction within the CVMT sought to halt the Secretarial election that followed, Mr. Mendibles led the charge in intervening on the side of the *Government* to defend "each of the 289 Eligible Group members" who would be harmed by the injunction. Intervenor Defs.' Opp'n to Mot. for TRO & Prelim. Inj. at 20, *CVMT*, No. 19-cv-917 (D.D.C.), ECF 11. Disavowing all of his prior efforts, Mr. Mendibles now swears under oath that the 1929 descendants deserve no place in the Tribe. ECF 37-2 at 2–3.

Plaintiffs miss the mark in their attempt to minimize their unequivocal about-face. Regardless of whether Mr. Mendibles or other Plaintiffs were previously mistaken about the lineage of Jeff Davis, or whether they thought including the 1929 descendants "would only *slightly* increase [membership]," ECF 39 at 10, the inescapable reality is that Plaintiffs are asking the Court to hold that the same eligibility criteria they proposed and defended over several years now

constitutes an irreparable "affront to the sovereignty of the Tribe." ECF 37-2 at 2–3. The Court declines to make such a finding.

\*   \*   \*

At bottom, Plaintiffs have not demonstrated that they will suffer imminent and irreparable harm absent an injunction. As such, the Court need not proceed to the remaining preliminary injunction factors. *See Winter*, 555 U.S. at 22; *CityFed Fin. Corp.*, 58 F.3d at 747. The Court acknowledges that a stay of the Tribal organization process makes a good deal of practical sense. But once the Government had declined that option it became the Plaintiffs' obligation to make a "clear showing" of their entitlement to a preliminary injunction, and they have failed to do so.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for preliminary injunction. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

                                                                                             _____
                                                                                             JIA M. COBB
                                                                                             United States District Judge

Date: November 17, 2023